UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARLOS IVAN VICENTE-ABAD,

    Plaintiff,

v.                                                     Case No: 6:18-cv-288-PGB-GJK

TIMOTHY SONNENBERG, in his
individual capacity,

    Defendants.
_____/

## ORDER

This cause comes before the Court without oral argument on Defendant Officer Timothy Sonnenberg's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 43 (the "**Motion**")) and responsive briefs (Docs. 59, 61), and Defendant's Unopposed Request for Judicial Notice (Doc. 53). Upon consideration and review of the record as cited by the parties in their respective briefs, Defendant's Request for Judicial Notice will be granted, and Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.

**I.    BACKGROUND[1]**

This action arises out of the shooting of Carlos Ivan Vicente-Abad ("**Plaintiff**") by Officer Timothy Sonnenberg ("**Defendant**") of the Melbourne Police Department on February 15, 2015. (Doc. 2). Plaintiff brings constitutional and state law claims against Defendant in his individual capacity. (*Id.*).

---

[1]    This account of the facts is drawn from parties' affidavits, police reports, and expert reports.

On the evening of February 15, 2015, Defendant and Officer D'Errico were patrolling the "high crime" Area 9, part of the University Boulevard corridor, in a marked police vehicle. (Doc. 57, ¶¶ 1–3). Shortly after midnight, Defendant and Officer D'Errico observed a grey four-door Chevrolet ("**Suspect Vehicle**") driving east at a high rate of speed in excess of the posted speed limit of thirty-five miles per hour.[2] (Doc. 43, p. 3; Doc. 57, ¶¶ 6–7; Doc. 59, p. 3). Defendant and Officer D'Errico followed the grey Chevrolet into the Shull Manor Apartment parking lot. (Doc. 44, ¶¶ 15–16; Doc. 45, ¶¶ 15–16). The Suspect Vehicle then proceeded to the back of the complex and pulled into a parking spot. (Doc. 44, ¶¶ 19–21; Doc. 45, ¶¶ 17–18; Doc. 59-1, pp. 8, 11, 12).

After stopping a few feet away, Defendant activated and shined a spotlight on the Suspect Vehicle prompting the driver, James Markel Turpin ("**Turpin**"), to pull the vehicle forward, make a three-point turn, and then back into a space. (Doc. 44, ¶ 24; Doc. 45, ¶ 22; Doc. 59-1, p.12; Doc. 59-5, p. 9). The police car was thus positioned between the rows of parked cars directly east of the Suspect Vehicle. (Doc. 44, ¶¶ 22–23; Doc. 45, ¶¶ 20–21; Doc. 57, ¶¶ 11–12). Officer D'Errico and Defendant stepped out of their cruiser to approach, but Defendant had to turn around to retrieve his flashlight. (Doc. 44, ¶¶ 25, 27; Doc. 59-1, p. 4). While shining a flashlight into the Suspect Vehicle, Officer D'Errico approached and observed three individuals in the car. (Doc. 45, ¶ 24). According to statements from the car's occupants, each was aware that the spotlight was from a police

---

[2] The vehicles' speed is in dispute. In James Markel Turpin's sworn statement, he says he was driving about thirty miles per hour. (Doc 59-1, pp. 10–11). Additionally, Mikeisha Alves testified that Turpin "slightly increased his speed" when he realized the patrol vehicle was following him. (*Id.* at p. 12).

vehicle and that an officer was approaching.³ (Doc. 59-1, pp. 8, 10–12). However, neither Officer D'Errico nor Defendant announced to Plaintiff and other occupants in the vehicle that the officers were approaching the vehicle. (Doc. 59-1, pp. 6, 9).

When Officer D'Errico reached the Suspect Vehicle, the officers testified the tires made a squealing noise as the suspect vehicle sped forward. (Doc. 44, ¶ 27; Doc. 45, ¶ 25). Plaintiff disputes this fact. According to Plaintiff, Turpin, and an eyewitness, Shamor Bledsoe, the Suspect Vehicle started to slowly drive out of the parking spot to pass between the police cruiser and the parked cars.⁴ (Doc. 59-1, pp. 10, 11, 13). When Turpin began to drive east out of the parking spot, Defendant stepped out of the cruiser in the "narrow⁵ gap between [the] patrol car and the parked cars." (Doc. 44, ¶ 29; Doc. 57, ¶ 17). According to Defendant and Officer D'Errico, the Suspect Vehicle headed directly toward Defendant. (Doc. 44, ¶¶ 27–29; Doc. 45, ¶ 28). Contrarily, Bledsoe testified the vehicle was never heading directly at either Defendant or Officer D'Errico. (Doc. 59-4, p. 2).

At this time, Defendant shot ten rounds at the approaching Suspect Vehicle, with five rounds striking the front and four rounds striking the driver's side of the vehicle. (Doc.

---

³ Initially, Turpin testified that he did not realize that it was a police vehicle. (Doc. 59-1, p. 11). However, later in the interview, he admitted to knowing it was a marked Melbourne Police vehicle and made references to police officers in the area. (*Id.*). Further, all three passengers only stated that they had seen a police officer on the passenger side of the car. (*Id.* at pp. 8, 11, 12).

⁴ Plaintiff estimated that Suspect Vehicle was travelling four to five miles per hour. (Doc. 59-1, p. 9).

⁵ Defendant testified that there was less than ten feet between the police vehicle and the parked cars. (Doc. 44, ¶ 28). According to the crime scene diagrams, the distance between patrol vehicle's open door and other parked vehicle was measured to be 6 feet, 0.79 inches. (Doc. 59-1, p. 17).

3

44, ¶ 31; Doc. 57, ¶¶ 19–21). The Suspect Vehicle continued past the police cruiser and struck the curb. (Doc. 46, ¶ 18). Plaintiff was struck in the neck and the left bicep by one of the fired bullets. (Doc. 59-5, p. 9). After the Suspect Vehicle stopped, Defendant ordered Plaintiff out of the car. (Doc. 59-1, p. 5). Once Plaintiff exited the car, Defendant discovered Plaintiff had been shot in the neck and arm and called for medical assistance. (*Id.*). During the course of his medical treatment, Plaintiff's shoes were removed exposing a bag of cocaine hidden in his shoe. (Doc. 59-6, p. 2). Plaintiff was charged with possession of less than twenty-eight grams of cocaine and possession of drug paraphernalia. (Doc. 47). Plaintiff pled no contest to the charge for possession and was sentenced to two years of probation. (Doc. 48; Doc. 49).

The following day, crime scene investigators came to survey the scene. (Doc. 46, ¶¶ 10–13). According to the scene mapping, the Suspect Vehicle traveled 59 feet, 3.6 inches from the original parking spot to the midpoint of the patrol vehicle. (*Id.* ¶ 17). The Suspect Vehicle then traveled another 59 feet, 8.53 inches before it struck the curb. (*Id.* ¶ 18). After hitting the curb, the vehicle completely stopped after traveling 74 feet, 11.4 inches further. (*Id.* at ¶ 19). Thus, the Suspect Vehicle traveled a total of 193 feet, 11.53 inches from its original parked position. (*Id.* ¶¶ 17–19). During the investigation, Defendant explained that he feared for his life due to the speed and size of the Suspect Vehicle approaching him. (Doc. 44, ¶ 30–31).

Thereafter, Plaintiff brought suit in this Court. (Doc. 2). The Complaint asserts three Counts against Defendant, in his individual capacity: two 42 U.S.C. § 1983 claims for excessive force in violation of the Fourth Amendment and for false imprisonment (Counts

I and II); and a state law battery claim (Count III). (*Id.*). Defendant moves for summary judgment on all claims. (Doc. 43). With briefing complete, the matter is ripe.

## II.  JUDICIAL NOTICE

Under Federal Rule of Evidence 201(b), a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned." Additionally, a court "*must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added).

Defendant properly attached the state court docket entries in Case Number 05-2015-CF-015952-AXXX-XX from the Florida state court, supplying the Court with the necessary information support judicial notice. (Doc. 53). The accuracy of the supplied court records is easily verified and cannot be reasonably questioned. Fed. R. Evid. 201(b)(2). Thus, the Court takes judicial notice of the state court records regarding Plaintiff's arrest and adjudication of guilt for the possession of cocaine.

## III.  STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). A factual dispute is "genuine" only if "a reasonable jury could

5

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove up an essential element of their claim. *Celotex*, 477 U.S. at 322–23. Also, "[t]he court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam).[6]

## IV. Discussion

### A. Qualified Immunity Analysis

Defendant Sonnenberg moves for summary judgment on Counts I and II of the Complaint based on qualified immunity. (Doc. 43, pp. 8–11).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

---

[6] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

800, 818 (1982). To establish entitlement to qualified immunity, the government official must first show that he was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)). Plaintiff does not dispute this requirement, which is clearly met. (Doc. 57, ¶¶ 1–5).

After a defendant establishes the discretionary authority requirement, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Lee*, 284 F.3d at 1194. To do so, the plaintiff must show: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

*1.   Constitutional Violation*

Excessive force claims against law enforcement officers are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1990). The Fourth Amendment's reasonableness standard requires examination of the totality of circumstances leading to the decision to use force, "including the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted to evade arrest, and the feasibility of providing a warning before employing deadly force." *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010). Further, the Court must resolve factual disputes in favor of the party asserting the injury. *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). However, the reasonableness standard demands the facts be viewed from the officer's perspective, without the benefit of hindsight. *Id.* at 1255.

With these guideposts in mind, the Court finds Defendant's use of force was objectively unreasonable. Defendant and Officer D'Errico began following the Suspect Vehicle without engaging the police cruiser's siren or emergency lights. Police subsequently approached the vehicle without attempting verbal commands to the Suspect Vehicle's passengers. Defendant cites several cases[7] he says demonstrate his entitlement to summary judgment, but these cases are inapposite because, in each, a defendant police officer used deadly force only after giving verbal commands or manifesting an intention to detain a suspect. Conversely, both Officer D'Errico and Defendant admitted they did not give verbal commands when approaching the Suspect Vehicle or engage the emergency lights or siren. (Doc. 59-1, pp. 6, 9). Likewise, *Long v. Slaton* helps Defendant little, because the suspect there was driving the officer's police cruiser to escape, which is a considerable difference in the level of danger to the public than in the instant case. 508 F.3d 576, 581–82 (11th Cir. 2007). Therefore, Defendant's cited cases do little to help his cause.

Further, there is a genuine, and potentially dispositive, dispute of material fact as to whether the Suspect Vehicle posed a danger to Defendant. Both Defendant and Officer D'Errico maintain the Suspect Vehicle was speeding directly toward Defendant, whereas Plaintiff, Turpin, and Shamor Bledsoe all stated under oath the vehicle was traveling at about five miles per hour. What's more, Shamor Bledsoe testified that the vehicle was not headed towards Defendant. Accepting Plaintiff's version of the facts as true, see

---

[7] *See Spencer v. City of Orlando*, 725 F. App'x 928, 930 (11th Cir. 2010); *Long v. Slaton*, 508 F.3d 576, 579 (11th Cir. 2007); *Robinson*, 415 F.3d at 1254; *Pace v. Capobianco*, 283 F.3d 1275, 1277–78 (11th Cir. 2002).

8

*Robinson*, 415 F.3d at 1257, Turpin was driving the vehicle at a slow speed and was not aware of Defendant's location, giving Defendant ample time to warn Turpin and Plaintiff of his intention to use deadly force, or take any number of actions short of applying lethal force. Thus, Plaintiff has sufficiently established objective unreasonableness.[8]

### 2. Clearly Established Right

For the second part of the qualified immunity analysis, Plaintiff must show that the right violated was clearly established. A right can be clearly established in three ways: (1) "case law with indistinguishable facts clearly establishing the constitutional right"; (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right"; or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). The Eleventh Circuit has emphasized "[q]ualified immunity is unavailable 'if an *official knew or reasonably should have known* that the actions he was taking would violate the constitutional rights of the plaintiff.'" *Stephens v. Degiovanni*, 852 F.3d 1298, 1316 (11th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

In this case, Defendant reasonably should have known that shooting into a vehicle moving slowly constituted excessive force that violated Plaintiff's constitutional rights. Although there was only a ten-foot gap between the police car and other parked vehicles, Plaintiff vehicle was driving slowly, affording Defendant ample time to assess the situation and react without deploying lethal force. The Court is unconvinced by Defendant's

---

[8] The Court is not saying the procedural violation is equated to the constitutional violation that Defendant is trying to argue (Doc. 61) rather the constitutional violation stems from the deadly force used by Defendant.

9

contrary arguments. (*See, e.g.*, Doc. 43, p.15). Thus, taking the facts in the light most favorable to the non-movant, Plaintiff has shown the violated right was clearly established at the time of the shooting.

Therefore, Defendant is not entitled to qualified immunity for his use of excessive force. The Motion is due to be denied as to Counts I and II, because the qualified immunity defense fails.

### B. *Heck v. Humphrey* Analysis

Defendant also moves for summary judgment on Count II's false imprisonment claim based on *Heck v. Humphrey*, 512 U.S. 477 (1994), which proscribes § 1983 claims that depend on the negation of an element of an offense of which the plaintiff has been convicted. *Id.* at 486–87.

*Heck* is implicated and precludes claims where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Id.* at 487. Under this standard, the plaintiff must show that: (1) "the conviction of sentence has been reversed on direct appeal"; (2) "expunged by executive order"; (3) "declared invalid by a state tribunal authorized to make such determination"; or (4) "called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486–87. Pleading no contest to charges is the functional equivalent to a conviction under Florida law. Fla. Stat. § 960.291(3).

In this case, Plaintiff entered a plea of no contest to the drug possession charges leveled against him and was adjudicated guilty. Plaintiff's false imprisonment claim necessarily challenges his subsequent drug possession conviction. And since Plaintiff's conviction was not invalidated, expunged, or otherwise disturbed, he is barred from bringing an unlawful seizure claim. The Motion is thus due to be granted as to Count II.

### *1.* Vicente-Abad's Battery Claim (Count III)

Defendant moves for summary judgment on Count III of the Complaint based on sovereign immunity and immunity afforded under Florida Statutes §§ 768, 776. (Doc. 43, pp. 18–22). Plaintiff concedes that Defendant is entitled to summary judgment on this claim. (Doc. 59, p. 18). Accordingly, the Motion is due to be granted as to Count III of the Complaint.

### V. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Request for Judicial Notice (Doc. 53) is **GRANTED;**
2. Defendant's Motion for Summary Judgment (Doc. 43) is **GRANTED IN PART** and **DENIED IN PART** as follows:
    a. Defendant's Motion for Summary Judgment as to Counts II and III is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, Timothy Sonnenberg, and against Plaintiff, Carlos Ivan Vicente-Abad, as to Counts II and III of the Complaint.
    b. In all other respects, the Motion is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on July 29, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties